JOHN AND ANITA WITHERS v. D. M. CONNOR ET AL.

No. 2613.

1. **Surveys.**—See discussion of facts consisting of maps, field notes, monuments, tradition, etc., to ascertain the locality of a survey, none of the landmarks called for therein being identified upon the ground.

2. **Maps as Testimony—Locality of Survey.**—We know of no rule that would require a court to prefer a map description, though contemporaneously made, to testimony of a more direct character to the existence of a corner from which by measurement the locality may be determined.

3. **Evidence of Locality, etc.**—There is no specific rule of law to direct the mind in cases of conflicting testimony. The conclusion which is most reasonable and satisfactory under all the evidence should be adopted.

4. **Cases Adhered to.**—Stroud v. Springfield, 28 Texas, 669, and Welder v. Carroll, 29 Texas, 317, adhered to.

APPEAL from Refugio. Tried below before Hon. H. Clay Pleasants. The opinion states the case.

*Stayton, Kleberg & Dabney,* and *Stockdale & Proctor,* for appellants, cited Booth v. Upshur, 26 Texas, 67; Booth v. Strippleman, Id., 441; Chenowith v. Haskell, 3 Pet., 96; Stafford v. King, 30 Texas, 271; Robertson v. Mosson, 26 Texas, 251; Urquhart v. Burleson, 6 Texas, 511; Welder v. Carroll, 29 Texas, 317; Alexander v. Lively, 5 Mon., 161; Gibson v. Poor, 21 N. H., 440; Pike v. Hayes, 19 N. H., 19–40; Deming v. Carrington, 12 Conn., 1; Whitney v. Baker, 69 Am. Dec., 281; Wyne v. Alexander, 47 Am. Dec., 326; Thompson v. Comstock, 59 Texas, 320; Railway v. McGehee, 49 Texas, 489; Phillips v. Ayres, 45 Texas, 605; Hubert v. Bartlett, 9 Texas, 103.

*Glass, Callender & Proctor* and *Fly & Davidson,* for appellees.—1. The court did not err in fixing the upper line of the Joshua Davis grant by measurement from the upper line of the Peter Hynes grant, because the grants belong to the same block of surveys, and were surveyed about the same time by the same surveyor, and have a common boundary line between them; and the Hynes grant is junior to the other by only a few days.

2. The court did not err in fixing the upper line of the Davis grant by this measurement from the Hynes, because the latter was a certain, well known, and long established line, and measurement from it was the only certain or reliable data by which the Davis line could be fixed.

3. The court can not be charged with disregarding the calls of the field notes of the Joshua Davis grant, for none of the objects called for in those field notes could be found and identified upon the ground, on the lines claimed by plaintiffs.

COLLARD, JUDGE.—This is an action of trespass to try title brought by Anita Withers and her husband, the appellants, on the 21st day of January, 1886, to recover of appellees and other defendants the lower or eastern league of the two leagues granted to Manuel Hernandez and his brothers. The two leagues are described in the petition and the grant as 3333⅓ varas front on the San Antonio River on its right bank, in depth

on the lower line 15,600 varas, and on the upper line 15,500 varas, bounded on the north by the river, on the west by the citizen William Robertson, south by vacant land, and on the east by the citizen Joshua Davis. It was admitted that plaintiff Anita Withers owned the Hernandez title. The Davis five and one-fourth leagues grant was surveyed August 28, 1834; the Peter Hynes, September 9, 1834; the Hernandez, November 28, 1834; the Westover or lower Hernandez league, September 22, 1834; and the Robertson before the Hernandez. The calls of the Hernandez place it between the Davis five and one-fourth leagues on the east and the Robertson on the west. The Hynes survey of one league lies next east of the Davis, and calls for the Davis. The Davis five and one-fourth leagues are numbered from one to five from the east or down the river, the quarter league being the western survey of the grant. Each league points on the river and calls to be 1666⅓ varas wide, and the fourth of a league 416⅔ varas wide, the length of the lines being 14,250 to 15,000 varas and more. The entire distance in a right line and at right angles from the side lines—that is, running east and west—including the quarter league, is 8747⅔ varas. League No. 1 of this grant begins " on the San Antonio River on the south side, two miles below the Mesquite Landing, at a stake, calling for two pecan trees as bearings at stated courses and distances; thence it runs south 5 degrees west 14,060 varas a stake and mound; thence north 85 degrees west 1666⅓ varas a stake; thence north 5 degrees east 15,940 varas, corner on the river, a stake with a pecan and mulberry for bearings; and thence with the meanderings of the river to the beginning. League No. 2 is next above and adjoining league No. 1, and so on to the west boundary of the fourth of a league. There is no dispute about the position of the Robertson league. The Davis five league grant was invalid, but the fourth of a league valid. Defendants claim that the Hernandez grant only contained one league; plaintiffs claimed that it contained one league and some 2700 acres more. The question was, was there room between the Davis fourth of a league and the Robertson for the Hernandez league and the 2700 acres, as claimed by the plaintiffs?

To determine this question, the place of the Robertson being fixed and known, it is apparent that the space covered by the Davis five and one-fourth leagues from the east to the west must be ascertained. Plaintiff's evidence showed that Mesquite Landing was a fixed point on the river, and that to begin two English miles down the river in a straight line from the landing, and measuring thence north 76 degrees west across the leagues and the fourth of a league the distance called for, there was a space left for the upper Hernandez league and 998 varas width for a part of the lower Hernandez between the Davis and the Robertson; and that to give the Davis this position, the side lines of the Davis leagues very nearly fitted the shape of the river. None of the corners or lines were found of the Davis; the Hernandez called for no marked lines or corners,

but is placed by the grant between the Davis and the Robertson.    There is a large bend in the river, known as Bickford Bend.    Plaintiffs introduced a plat of the Davis grant, with the original field notes made by S. A. White, the colonial surveyor who made these surveys, on file in the General Land Office, which places the west or upper line of the Davis quarter league below the bend, and far enough down the river to admit the upper Hernandez and the 2700 acres of the lower, as claimed by plaintiffs.    Plaintiffs also exhibited in evidence another certified copy from the General Land Office of a map made by White, showing the two Hernandez leagues, the lower line of the lower league falling below the bend, where the other map fixed the upper line of the Davis quarter league.

Plaintiffs also exhibited a sketch made in the General Land Office, with an explanatory letter from Commissioner Hall of date September 6, 1888. The letter says, "Up to 1847 all sketches returned to this office were not filed in the manner they are at present, but were scattered about in the office, and had accumulated considerably when Thomas W. Ward, then commissioner of this office, employed a bookbinder to prepare what are now called atlases A, B, C, in which the sketches hitherto filed were pasted promiscuously.    Few of the sketches are dated, nor do they show when they were filed.    The sketch referred to in atlas A, page 1, has the following endorsement in pencil, 'Map by S. A. White, by testimony of Fd. D. Linn.'    This endorsement is in the handwriting of Robert Creuzbaur, who was a draftsman in the General Land Office from 1846 to about 1853."    The parties admitted the facts stated in the letter to be true. The map shows the position of both the Hernandez leagues, the lower line of the lower league below the bend in the river, and where plaintiffs claim it is.    Plaintiffs' witness F. S. Winsor, surveyor, made a survey of the Davis five and one-fourth leagues and other surveys to ascertain the quantity of land in the Hernandez grant.    He says he began 3801 varas or two English miles below the Mesquite Landing, and "I then ran north 76 degrees west 1017 varas to the west line of the Peter Hynes, as established by W. Richardson, surveyor."    The survey so made by Winsor and the map he made of the work put the land where the old maps did, the calls fitting the river except two lines, and it was shown that at the termination of the lines on the river there was the kind of timber called for in the original field notes.

On the other hand, it was proved that the county map of 1872, and at the time of the trial, placed the land where defendants claim it to be; that it was so located and recognized in the Land Office, and that the public work made on the old Davis grant of five leagues gave it that position. H. Wood, a witness for defendants, who had been surveying in Refugio and adjoining counties since 1862, and county surveyor of Refugio from 1870 to 1882, testified:    "I have made several surveys for locations on the land covered by the Joshua Davis five leagues, which were declared

invalid. In making these locations I was governed by the upper line of
the Peter Hynes league, as marked by a stone at the head of Hynes Bay,
which was always recognized as the true upper line of the Hynes league.
Judge John Hynes, now dead, and the grantee of the John Hynes one-
fourth of a league under Power and Hewitson's colony told me that
the stone was placed there by S. A. White, the colonial surveyor. W. H.
Jones, who was county surveyor of Refugio County as far back as 1850,
made some of the surveys for location on the Davis five leagues. * * *
I followed him and found that he recognized the Hynes league upper
line as marked by the stone before referred to, and the Davis one-fourth
of a league in the position claimed by the defendants. I have several
times run across with connecting lines made by Jones from the upper
Hynes line marked by the stone to the lower line of the Davis one-fourth
of a league as claimed by defendants, and have always found the distance
to be 8333⅓ varas, or each league 1666⅔ varas in breadth. This measure-
ment puts the Joshua Davis one-fourth of a league where it has always
been shown by the official maps of Refugio County, and as claimed by
defendants. * * * All locations made by me on the Joshua Davis
five leagues were made with reference to the Hynes upper line marked
by the stone." This witness says that to follow the meanders of the river
two miles below Mesquite Landing would, in his opinion, put the line
where the stone marks it. On a straight line, at right angles from the
north and south lines, the stone would be reached in about 2000 varas,
or two Spanish miles (made so by decree of March 26, 1834, before these
surveys were made). Pasch. Dig., art. 709.

Moses Simpson, a witness for the defendants, says: "In 1848 or 1849
I went with W. H. Jones, now dead, the county surveyor, to survey a
tract way up the San Antonio River, and above the Hernandez bend. I
was a chain carrier. For a starting point we went to the upper corner on
the river of the Hynes league in the position claimed by defendants, which
Jones said was the original corner of the Hynes. This corner was
marked with the letters P. H. cut on a large cottonwood tree very plain
and distinct. These letters seemed to have been made some ten or fifteen
years before. There was also a rock on said line near the head of Hynes
Bay. From this line we measured up the river and passed a point. Here
at this point we found then standing a large ash tree, marked, which
Jones said was the upper line of the Davis one-fourth of a league." Ac-
cording to this testimony the land is as claimed by the defendants. The
testimony showed that the surveyors and the Land Office recognized the
upper line of the Davis one-fourth of a league, where defendants say it
is, as far back as 1850. The court so found, holding that the stone cor-
ner on the Hynes was established by tradition, and that the Davis should
be located by the Hynes.

It is true the Hynes was junior to the Davis by a few weeks, but that

is immaterial where the evidence shows that the surveys were made about the same time and by the same surveyor. Taking the stone corner on the Hynes as it northwest corner, and giving distance to the Davis leagues as called for in the field notes, the conclusion of the court can not be questioned. It seems to us that the evidence controlling the opinion of the court is more satisfactory than that against it. Some one (and it is shown by hearsay that it was the surveyor who made these original surveys) made the stone corners for the Hynes; this is the corner as shown by reputation; it is so recognized by the official maps and public surveyors, whose acts are in conformity with it, and we think there is better ground to say this is the corner than that it is elsewhere.

The old maps of White giving the locality of the Davis leagues by the shape of the river are not without force, but it is weakened by the fact that there is no evidence to show that any line was ever actually run out. The Davis grant on the plaintiffs' hypothesis must be located by course and distance from Mesquite Landing, not by a found corner or a monument. It begins two miles down the river from Mesquite Landing. It is not stated whether these are Spanish miles or English miles; if Spanish miles it would be only 2000 varas, and the land would lie nearly as defendants claim it. There being a decree at the time defining a mile as 1000 varas at least leaves the matter in doubt as to what the surveyor meant by two miles. Decree March 24, 1834; Pasch. Dig., art. 709. Witness trees are called for on the river, but while such timber is to be found on the river, it is not shown that they are in place as stated in the field notes, nor does it appear that such trees are not to be found at other points on the river where the defendants say the corners should be.

It may be safely assumed that none of these lines were ever run, and that but one monument was ever put on the ground to designate a corner, to-wit, the northwest corner of the Hynes, which is the northeast corner of the Davis grant. Reputation fixes this corner, and we think more reliably than the old maps or the partial agreement of the length of the lines as shown by a survey giving to some extent the shape of the river. Had the river been meandered so as to outline its shape, and if the actual survey corresponded to the calls, there would be more force in the position that we must be governed by the river as a natural boundary. It is true the cottonwood tree is not called for in the Davis field notes nor in the Hynes, but the fact remains that the tree is there, marked for the Hynes league "P. H.," which marks were seen in 1849 by a witness, who says they then looked to be ten or fifteen years old, which would make them as old as the grant. The stone corner was then there, and the public surveyor then declared this to be the corner of the Hynes, and it was so understood to be. Stroud v. Springfield, 28 Texas, 669.

We are authorized to look to the maps made by the surveyor as indicating the place of these surveys; but at last the question is one of fact

depending upon the force of the testimony, and we know of no rule that would require a court to prefer a map description, though contemporaneously made with the grant, to the testimony of a more direct character as to the existence of a corner.   Welder v. Carroll, 29 Texas, 333.

That conclusion which is most reasonable and satisfactory under all the evidence is the one to be adopted.   We do not think there is any specific rule of law to direct the mind in such a case.   If we take plaintiffs' evidence and the old maps as our guide, we can easily reach the conclusion that the Hernandez grant is correctly located by plaintiff's witness Winsor; but when we look to the facts adduced in evidence by defendants, we see grounds for the opinion of the court that they had properly located the land.

We have not treated every assignment of error in detail, but have indicated our views of all of them.   We can not say the court erred in establishing the Haynes survey by the stone corner, and then by this constructing the Davis five and one-fourth leagues.   The Hernandez grant could only lie between the Davis one-fourth of a league and the Robertson league, and we do not see but that the court below followed the most reliable evidence in locating it.

We conclude the judgment of the lower court should be affirmed.

*Affirmed.*

Adopted January 28, 1890.

Chief Justice Stayton not sitting.